# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs December 7, 2001

## WOODLAWN MEMORIAL PARK, INC.  v.  ROGER KEITH, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 97-2731-II     Hon. Carol L. Soloman, Judge, sitting by interchange**

---

### No. M2000-00612-SC-WCM-CV - Filed March 1, 2002

---

In this workers' compensation appeal, an employee was allegedly injured in the course and scope of her employment. While purportedly seeking medical treatment for these injuries, she contracted an infection and died. The employer filed suit in the Davidson County Chancery Court claiming that no compensable injury occurred and that the employee used the excuse of an injury to seek prescription drugs for her addiction. The trial court held for the employer and later granted the employer's motion for discretionary costs. The Special Workers' Compensation Appeals Panel reversed, finding that a preponderance of the evidence established that a work-related injury did occur and that the employee died as a result of seeking treatment for those injuries. We then granted the employer's application for full court review and hold that the trial court's findings are supported by a preponderance of the evidence. We also hold that the trial court did not abuse its discretion in awarding discretionary costs to the employer. The judgment of the Davidson County Chancery Court is affirmed.

**Tenn. Code Ann. § 50-6-225(e)(5)(B); Findings of Fact and Conclusions of Law of the Special Workers' Compensation Appeals Panel Rejected; Judgment of the Davidson County Chancery Court Affirmed**

WILLIAM M. BARKER, J., delivered the opinion of the court, in which FRANK F. DROWOTA, III, C.J., and E. RILEY ANDERSON and JANICE M. HOLDER, JJ., joined. ADOLPHO A. BIRCH, JR., J., not participating.

Michael A. Geracioti and Dale A. Tipps, Nashville, Tennessee, for the appellant, Woodlawn Memorial Park, Inc.

William A. Cameron, Charles L. Hardin, and Arnold E. Lefkovitz, Cookeville, Tennessee, for the appellees, Roger Keith, individually, as Widower of Connie Keith, decedent, and as guardian of Amber Breedlove, the minor child of the decedent; Bruce Breedlove, as natural father and legal guardian of Amber Breedlove.

**OPINION**

**FACTUAL BACKGROUND**

On May 3, 1997, Connie Keith, a student intern and part-time employee with Woodlawn Memorial Park, Inc. ("Woodlawn"), backed into a fire extinguisher mounted on a wall while helping a co-worker to embalm a body. Although she refused medical treatment and continued to work an additional ten hours without complaint, Ms. Keith later claimed that this incident aggravated older rib injuries caused by a 1995 car accident. From May 8 to June 9, she made some fourteen visits or calls to various physicians, hospitals, and emergency rooms complaining of rib pain.

Her recitation of the dates and details of her rib injuries, however, varied widely in these visits. For example, she listed as many as eight different dates for the incident, ranging from April 27, one week before the incident, to June 4, more than a month after the incident. Moreover, she gave at least three different accounts of how she sustained her injuries: that she backed into a fire extinguisher at work; that she injured her ribs while riding in a boat; and that she suffered pain only from the original rib injuries in 1995.

In almost every one of these visits, Ms. Keith obtained several types of prescription medications, even though in many instances, she had already acquired sufficient supplies of these drugs from other physicians. Her medical records reveal that, in some cases, she would obtain a ten- or twelve-day supply of a particular drug from one physician, only to obtain additional supplies of that same drug from another physician the very next day. Indeed, during one ten-day period from May 27 to June 6, Ms. Keith sought, and apparently obtained, forty-two days' worth of one addictive medication alone.[1]

Finally, on June 9, 1997, Keith again complained to her physician of severe rib pain, and she was admitted that day to Centennial Medical Center ("CMC") in Nashville. Upon her admission, an anesthesiologist with CMC's pain clinic elected to start medication through an epidural catheter placed in her spine, and she later reported a marked relief from the pain. However, the catheter site soon developed a staph infection.

The physicians removed the catheter and administered antibiotics, but, on the morning of June 15, they found Ms. Keith unresponsive and without a heart rhythm. Although the physicians were able to reacquire a heart rhythm, Ms. Keith never regained consciousness, and during the afternoon of June 18, she passed away. An autopsy revealed that the staph infection caused spinal meningitis, which lead to cardiac arrest and lack of oxygen to the brain.

---

[1] Taking only one prescription drug as an example, Ms. Keith obtained a ten-day supply of Soma, an addictive muscle relaxant, from her physician by telephone call on May 27. On May 30, she obtained another ten-day supply of this drug after a visit to Baptist Centra Care Hospital. On June 2, she obtained a twelve-day supply of Soma from Dr. Martin, and the very next day, she obtained another ten-day supply of Soma again from Baptist Centra Care Hospital. Finally, three days later, on June 6, Ms. Keith sought another ten-day supply of Soma, again from Dr. Martin.

On August 15, 1997, Woodlawn filed a complaint in the Davidson County Chancery Court to resolve whether Ms. Keith was entitled to workers' compensation benefits.[2] Woodlawn claimed that no compensable injury had occurred on May 3 and that Ms. Keith used the excuse of an injury to seek addictive prescription drugs. Woodlawn also alleged that Ms. Keith's admission to CMC resulted from her desire to obtain these drugs rather than from any pain caused by a work-related injury. On November 10, 1997, Ms. Keith's husband, Roger Keith, filed a counterclaim for benefits, and on July 22, 1999, the trial court held a hearing.

At the hearing, Woodlawn submitted Ms. Keith's medical records to show that she was engaged in "drug seeking behavior." It also introduced the testimony of one of Ms. Keith's co-workers who stated that she asked him for prescription medication to ease rib pain a full two weeks before her alleged injury at work. Finally, Woodlawn introduced evidence showing that Ms. Keith did not mention any rib injury when she visited a physician for prescription diet drugs only three days after the work incident. The doctor's report of this physical examination also made no mention of a rib injury or of any bruising.

The sole witness for the defendants was Ms. Keith's husband, Roger Keith. Mr. Keith related that his wife began suffering from severe pain on May 3 or May 4 and that she had trouble accomplishing simple tasks around the house, such as picking up items, climbing stairs, or even washing her hair. However, he denied any knowledge of his wife's admission to various hospitals for drug overdoses—including once just weeks after they were married for a second time—and he denied ever seeing her take any prescription medication.

After arguments, the court took the case under advisement, and on February 14, 2000, the trial court entered a final order denying workers' compensation benefits. In its order the court found that

> Connie J. Keith was not injured on the job at Woodlawn Memorial Park, Inc., but in fact used any excuse to gain appointments with physicians in order to obtain drugs, usually, but not always, opiates. Further, the Court finds it was the drug seeking behavior of Connie J. Keith which led to her death through her desire to be hospitalized and the infection from the hospitalization. In addition, this Court finds the witness, Roger Keith, not to be credible in his denial of knowledge of nineteen (19) years of drug use by his wife and of any drug overdoses.

The trial court also later granted Woodlawn's motion for discretionary costs under Tennessee Rule of Civil Procedure 54.04.

---

[2] This action was filed against Ms. Keith's husband, individually and as guardian for Amber Breedlove. Ms. Breedlove was Ms. Keith's daughter, who was living with the couple at the time of Ms. Keith's death. Woodlawn also sued Bruce Breedlove, who is Ms. Breedlove's natural father.

The defendants appealed to the Special Workers' Compensation Appeals Panel, which reversed the judgment and remanded the case for a determination of benefits. Although the Panel acknowledged that Ms. Keith had a drug problem and engaged in drug-seeking behavior, it nevertheless found that "she did back into a fire extinguisher on May 3, 1997[,] while working at Woodlawn," and that she "sought treatment from Dr. Martin for this injury." Accordingly, the Panel held that the preponderance of the evidence weighed against the trial court's finding that Ms. Keith's death did not arise from the treatment of a compensable injury.

Woodlawn then requested full Court review of the Panel's decision pursuant to Tennessee Code Annotated section 50-6-225(e)(5)(B) (1999). We granted Woodlawn's motion, and for the reasons given herein, we reject the Panel's proposed findings of facts and conclusions of law. Instead, we conclude that the preponderance of the evidence supports the trial court's conclusion that Ms. Keith suffered no compensable injury. We also hold that the trial court was within its discretion in awarding discretionary costs to Woodlawn. The judgment of the Davidson County Chancery Court is reinstated.

## STANDARD OF APPELLATE REVIEW

Any issue as to whether an employee's injury arose out of his or her employment, or whether it arose from factors not associated with that employment, is a question of fact. See Mayes v. United States Fid. & Guar. Co., 672 S.W.2d 773, 774 (Tenn. 1984). Accordingly, our standard of review is *de novo* upon the record, accompanied by a presumption that the factual findings of the trial court are correct, unless the preponderance of the evidence is otherwise. See Tenn. Code Ann. § 50-6-225(e)(2) (1999); Houser v. Bi-Lo, Inc., 36 S.W.3d 68, 70-71 (Tenn. 2001). In reviewing the court's factual findings, we must give considerable deference to the trial judge when issues of credibility and weight of oral testimony are involved. See Tobitt v. Bridgestone/Firestone, Inc., 59 S.W.3d 57, 61 (Tenn. 2001). However, "[n]o such deference is warranted in reviewing documentary proof," Ferrell v. Cigna Prop. & Cas. Ins. Co., 33 S.W.3d 731, 734 (Tenn. 2000), and this Court "is able to make its own independent assessment of the medical proof when the medical testimony is presented by deposition," Cleek v. Wal-Mart Stores, Inc., 19 S.W.3d 770, 774 (Tenn. 2000) (citations omitted). Finally, although the employer here initiated the suit as the plaintiff, the employee nevertheless bears the burden of proving the existence of a compensable injury. See Cutler-Hammer v. Crabtree, 54 S.W.2d 748, 752 n.2 (Tenn. 2001); see also White v. Werthan Indus., 824 S.W.2d 158, 159 (Tenn. 1992).

## COMPENSABLE INJURY

The first issue that we address in this case is whether a preponderance of the evidence supports the trial court's finding that Ms. Keith did not suffer a work-related injury on May 3, 1997. To recover benefits under the Workers' Compensation Act, an employee must first prove that he or she suffered an "injury by accident arising out of and in the course of employment." See Tenn. Code Ann. § 50-6-102(12) (1999). Woodlawn does not dispute that Ms. Keith's injuries, if any, occurred "in the course of" her employment, or that they occurred while she was performing a duty that she

was employed to perform. Cf. Cunningham v. Shelton Sec. Serv., Inc., 46 S.W.3d 131, 135 (Tenn. 2001). Rather, the principal issue here is whether Ms. Keith's injuries, if any, "arose out of" her employment with Woodlawn.

An injury is deemed to arise out of the employment "'when there is apparent to the rational mind, upon a consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury.'" Houser, 36 S.W.3d at 71 (quoting Fink v. Caudle, 856 S.W.2d 952, 958 (Tenn. 1993)). In Tindall v. Waring Park Association, 725 S.W.2d 935 (Tenn. 1987), this Court discussed the "causal connection" requirement needed to show that an injury is compensable:

> Although absolute certainty is not required for proof of causation, medical proof that the injury was caused in the course of the employee's work must not be speculative or so uncertain regarding the cause of the injury that attributing it to the plaintiff's employment would be an arbitrary determination or a mere possibility. If, upon undisputed proof, it is conjectural whether disability resulted from a cause operating within petitioner's employment, or a cause operating without employment, there can be no award. If, however, equivocal medical evidence combined with other evidence supports a finding of causation, such an inference may nevertheless be drawn by the trial court under the case law.

Id. at 937 (citations and internal quotation marks omitted).

Upon careful examination of the record in this case, we find that the weight of the evidence supports the trial court's conclusion that Ms. Keith suffered no compensable injury. First, little evidence exists to show that she actually suffered any injury on May 3. One of Ms. Keith's co-workers testified that she continued to work a full ten-hour day, without complaint or comment, after bumping into the fire extinguisher that morning. Although this co-worker offered to help Ms. Keith seek medical treatment at that time, an offer that was apparently standard procedure following all injuries at Woodlawn, she declined, saying "No, I'm fine." In addition, Ms. Keith visited a physician in Cookeville shortly after this incident to seek prescription diet medication, but she did not complain of any rib pain or even note that an incident had occurred three days earlier. Indeed, the physician's report of the physical examination reveals no abnormality in this regard, though it does note other particulars such as complaints of migraine headaches.

The conclusion that Ms. Keith suffered no injury is further supported by the unrefuted expert testimony of Dr. Theresa Tilton, a Board Certified Radiologist who examined four sets of x-rays taken of Ms. Keith's rib area before and after the May 3 incident.[3] Dr. Tilton concluded that while the x-rays taken immediately after her car accident in 1995 revealed the presence of multiple rib fractures, the x-rays taken later in May and June of 1997 revealed no new fractures, refractures,

---

[3] The dates of these x-rays were February 19, 1995 (immediately after Ms. Keith's car accident), May 30, 1997, May 31, 1997, and June 15, 1997.

separation, or any other type of new rib injury.  Instead, Dr. Tilton testified that all three sets of the 1997 x-rays confirmed that any rib injury present on those x-rays was "not the result of any trauma that occurred within the prior six months [of the x-rays being taken]."[4]

The Special Appeals Panel, taking a contrary view of the evidence, noted that Ms. Keith's treating physician, Dr. Richard Martin, initially diagnosed her on May 8, 1997, as possibly having new rib fractures.  The Panel did not mention, however, the fact that Dr. Martin later recanted this diagnosis and testified that he could not state within a reasonable degree of medical certainty that Ms. Keith suffered any acute rib injury at all.  Consequently, because the defendants' only medical evidence of an injury is contradicted by the very physician who initially diagnosed that injury, we do not find that Dr. Martin's initial diagnosis presents credible evidence showing that Ms. Keith suffered an actual injury to her rib area.

Second, and more importantly, even if Ms. Keith did suffer some injury to her rib area, the preponderance of the evidence supports the trial court's conclusion that it did not arise out of her employment with Woodlawn.  Although the alleged injury took place on May 3, 1997, one of Ms. Keith's co-workers testified that she complained of severe rib pain a full two weeks before that date on April 19.[5]  Moreover, Ms. Keith's radically different descriptions of the events causing her rib pain leave little doubt that she did not suffer any injury arising out of her employment with Woodlawn on May 3.  A review of her medical records during her fourteen visits or calls made to various physicians, hospitals, and emergency rooms after May 3 reveals that she gave as many as eight different dates for the event causing her pain, including April 27, May 4, May 9, May 21, May 23, May 28, May 31, and June 4.  She also described her pain in one visit as being due only to her old injuries, while on other occasions, she stated that she re-injured her ribs while lifting bodies or while boating in choppy waters.[6]  Although "an injured worker should not be penalized simply for being a poor historian," if minor and insignificant details vary, Orman v. Williams Sonoma, Inc., 803 S.W.2d 672, 677 (Tenn. 1991), the variations in Ms. Keith's accounts of her injuries are too significant to be ignored.

Because the proof demonstrating that Ms. Keith's injury arose out of her work with Woodlawn is, at best, speculative and uncertain, any attribution of her injury to her employment would only be "an arbitrary determination or a mere possibility."  See Tindall, 725 S.W.2d at 937.

---

[4] Interestingly, the autopsy of Ms. Keith revealed acute callous formations over several ribs indicating recent fractures.  However, no dispute exists that the x-rays taken after the alleged May 3 injury failed to reveal any fractures or acute callous formations, and therefore, this discovery in the autopsy fails to give rise to a reasonable doubt that Ms. Keith was injured on May 3.  Indeed, some testimony exists in the record which indicates that callous formations can begin to appear within three to five days of the injury.  This fact lead her treating physician to conclude that Ms. Keith could have been injured during the resuscitive efforts on June 15.

[5] In fact, during that visit, Ms. Keith even requested prescription medication from this co-worker to relieve her rib pain.

[6] Her husband later testified that they did not own a boat in 1997 and that he was unaware of this alleged boat-related injury until his deposition in November 1998.

Indeed, we are unable to find any rational connection at all between her alleged physical condition and the actual incident that occurred at Woodlawn on May 3, 1997. Consequently, we hold that the preponderance of the evidence supports the trial court's finding that Ms. Keith suffered no work-related injury "arising out of and in the course of [her] employment." Accordingly, we must reject the Panel's conclusion that her death on June 18 is compensable under the Act.

## DISCRETIONARY COSTS

The second issue in this case is whether the trial court abused its discretion in awarding discretionary costs to Woodlawn. According to the defendants, when the employer initiated the action, the minor's guardians became charged with the protection of her interests in the suit, and as such, they could not settle the action without first obtaining court approval. This restriction, they argue, effectively "tied [their] hands," forcing them "to be taxed with discretionary damages [that] they could not avoid" except by a court approved settlement. We disagree and find that the trial court did not abuse its discretion in assessing discretionary costs against the defendants.

Tennessee Rule of Civil Procedure 54.04 permits the "prevailing party" in litigation to recover certain discretionary costs, "unless the court otherwise directs." As is indicated by the language of the Rule, "[t]rial courts are afforded a great deal of discretion when considering whether to award costs," see, e.g., Mix v. Miller, 27 S.W.3d 508, 516 (Tenn. Ct. App. 1999), and "the trial judge may apportion the costs between the litigants as, in [his or her] opinion, the equities demand," Perdue v. Green Branch Mining Co., 837 S.W.2d 56, 60 (Tenn. 1992) (citing Tenn. Code Ann. § 20-12-119 (1980)). Consequently, "appellate courts are generally disinclined to interfere with a trial court's decision in assessing costs unless there is a clear abuse of discretion." Id. An abuse of discretion occurs when the court either applies an incorrect legal standard or reaches a clearly unreasonable decision, thereby causing an injustice to the aggrieved party. See Eldridge v. Eldridge, 42 S.W.3d 82, 85 (Tenn. 2001) (citing State v. Shirley, 6 S.W.3d 243, 247 (Tenn. 1999)).

We have found no authority suggesting that a trial court is unable to assess discretionary costs against a non-prevailing party under Rule 54.04 merely because that party is defending the interests of a minor, and we are unwilling to create such a rule in this case.[7] We also find unpersuasive the defendants' pleas that Woodlawn forced them to fully litigate Ms. Keith's claims by initiating the suit. Non-prevailing party defendants are not relieved from paying discretionary costs merely because a plaintiff has obliged them to appear in court. Moreover, because the defendants in this case later filed a counterclaim seeking benefits, they were in precisely the same procedural position as they would have been had they commenced the action themselves. Accordingly, because the trial court did not apply an incorrect standard or reach a plainly unreasonable decision, we hold that the

---

[7] The defendants' argument is unclear as to how the settlement restrictions hampered their ability to effectively litigate the workers' compensation claim brought against them. As Tennessee Code Annotated section 50-6-206 makes clear, *all* workers' compensation settlements must be approved, either by the court or by the Department of Labor, irrespective of whether the interests of a minor party are involved. Consequently, the defendants were no worse off, at least from a settlement perspective, than any other party involved in typical workers' compensation litigation.

trial court did not abuse its discretion in awarding Woodlawn discretionary costs pursuant to Rule of Civil Procedure 54.04.

## CONCLUSION

In summary, we hold that the weight of the evidence supports the trial court's conclusion that the employee in this case suffered no compensable injury. We also hold that the trial court did not abuse its discretion in awarding discretionary costs to the employer as the prevailing party below. Accordingly, we reject the findings of fact and conclusions of law as submitted by the Special Workers' Compensation Appeals Panel, and we reinstate the judgment of the Davidson County Chancery Court.

Costs of this appeal shall be assessed to the defendants, Roger Keith, individually, and as guardian of Amber Breedlove; and Bruce Breedlove, as the natural father and legal guardian of Amber Breedlove.

_____
WILLIAM M. BARKER, JUSTICE