IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2007 Session

## ROBIN LEE STANFILL, ET AL. v. JOHN T. MOUNTAIN, ET AL.

**Appeal from the Circuit Court for Maury County**
**No. 10862     Stella R. Hargrove, Judge**

---

**No. M2006-01072-COA-R3-CV - Filed February 12, 2008**

---

This appeal arises out of a real estate transaction in Maury County, Tennessee, wherein the Plaintiffs/Appellants purchased property from Defendants/Appellees John T. Mountain and Melody Mountain. Defendant/Appellee Carl Brooks served as an independent real estate agent for the transaction. Plaintiffs filed suit against the Defendants alleging fraud, misrepresentation and violation of the Consumer Protection Act. Both Defendants filed motions for summary judgment. By Order dated April 19, 2006, the trial court granted summary judgment in favor of the Defendants. Subsequently, the trial court awarded discretionary costs against the Plaintiffs. For the following reasons we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JON KERRY BLACKWOOD, SR. J., delivered the opinion of the court, in which HOLLY M. KIRBY and ANDY D. BENNETT, JJ., joined.

John E. Herbison, Nashville, Tennessee, for appellants, Robin Lee Stanfill and Robyn Ann Stanfill, individually and as next friends on behalf of their minor children, C. S. and M. S.

David A. Bates and C. Nicholas Fossett, Columbia, Tennessee, for appellee Carl Brooks.

Scott C. Williams and Rhonda A. Scott, Nashville, Tennessee, for appellees John T. Mountain and Melony Mountain.

**OPINION**

Factual Background

The Defendants, John T. Mountain and Melody Mountain, entered into a contract, dated June 19, 1999, for sale of their property located at 3982 Cecil Farm Road with Robin Lee Stanfill and Robyn Ann Stanfill [hereinafter "Plaintiffs"]. Defendant Carl Brooks served as a facilitator for this transaction. The closing occurred on August 2, 1999. After the Plaintiffs moved onto the property, they discovered certain alleged defects in the property which included mold contamination: defects

in the septic system, electrical and mechanical systems; septic problems; and, structural defects. Plaintiffs' children began to experience symptoms of diarrhea with occasional vomiting. Subsequent medical testing revealed a high level of lead within the children's bodies. The Plaintiffs also discovered the existence of underground storage tanks that had been used to store gasoline. These tanks were located within fifteen feet of the well that supplied the water for the house and underground swimming pool. These pipes had been observed by the Plaintiffs prior to the sale. However, Plaintiffs alleged that Defendant Carl Brooks informed them that the pipes were part of a diary. The well water was later tested and determined to be contaminated. On June 14, 2004, the Plaintiffs filed suit against the Defendants alleging fraud, misrepresentation and violation of the Tennessee Consumer Protection Act. An Amended Complaint was filed on September 24, 2004. The complaint alleged that Defendant Brooks concealed the problems with the property including the presence of lead-based paint, the presence of the underground storage tanks, that the tanks had contaminated the well, and the latent defects to the property. The Plaintiffs alleged that as a result of these misrepresentations they suffered damages for medical expenses, pain and suffering, loss of the enjoyment of life, and economic damages. By Order dated April 4, 2006, the trial court entered a Memorandum Opinion granting summary judgment in favor of the Defendants. The trial court found as follows:

> There is simply no proof of causation. There is no proof to any degree of professional certainty that the underground storage tanks caused contamination of the well. If causation cannot be established, then negligent or intentional misrepresentation concerning knowledge of the underground storage tanks on the part of any of the Defendants are immaterial.
>
> There is no proof as to damages caused by lead-based paint. Therefore, claims of misrepresentations regarding the Lead-Based Paint Disclosure form are immaterial. This is true as to all Defendants.
>
> No actual knowledge of any mold contamination on the part of any Defendants is conceded by Plaintiffs.

Standard of Review

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Tenn. R. Civ. P. 56.04. No presumption of correctness attaches to a trial court's judgment granting summary judgment. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). Our task is to review the record of the proceedings in the trial court to ascertain anew if the requirements of the summary judgment rule have been satisfied. *Id.* The moving party has the burden of proving that its motion satisfies requirements of Tennessee Rules of Civil Procedure 56. *Id.*

In order to obtain judgment in a summary fashion "the movant must either affirmatively negate an essential element of the non-movant's claim or conclusively establish an affirmative defense." *McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn. 1998)(citing *Byrd v.*

*Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)).  If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleading, but must offer proof to establish the existence of the essential elements of the claim.  *Id.*

<u>Analysis</u>

In support of Defendants' motion for summary judgment, the deposition of Dr. Roy Dallas Crowder, Ph.D. was filed.  Dr. Crowder was employed by the Department of Environment and Conservation for the State of Tennessee as a staff chemist.  Dr. Crowder reviewed the groundwater test results of the well water at 3982 Cecil Farm Road.  Dr. Crowder testified by deposition that he had more than thirty years experience in the analysis of contaminants in water samples and was familiar with testing petroleum contaminants in water.  Dr. Crowder testified that none of the compounds found in petroleum were found in the water sample taken from 3982 Cecil Farm Road.  He further testified as follows:

> In the case of Gasoline Range Organics, there's a – of which there was none detected here – you can go to the volatile analysis and you can look for typical volatile compounds that you'll see in gasoline and you can look for, again: benzene, toluene, ethyl benzene and xylene, which is call BTEX; that's actually another analysis that is petroleum oriented.  You can perform a BTEX analysis for those four compounds and you will find those present for gasoline . . .  None of these were detected.  There are other compounds that are typical of gasoline, there's methyl tertiary butyl ether, if it's a later, it's a more recent production.  Naphthalene is something that's common in gasoline.  In fact, naphthalene is used as a marker compound for UST [underground storage tank] contamination.  But there is nothing detected.  There are a mixture of benzene isomers 1,2,4 and 1,3,5 trimethylbenzene, is very characteristic of gasoline, but none of these were detected at all. And when I reviewed that aspect of it, I said, "Well there's no gasoline contamination of this water."

Dr. Crowder opined that the well water on the property was not contaminated by the presence of the underground storage tanks.  Dr. Crowder stated that he was 100 percent sure that in his "professional opinion" the water sample was not contaminated by petroleum.

An essential element of Plaintiffs' claim is causation.  The Plaintiffs have the burden of proving by a preponderance of the evidence that the groundwater well was contaminated by petroleum caused by the presence of the underground storage tank.  The testimony of Dr. Crowder negates this essential element of Plaintiffs' claim.

In order to establish causation, Plaintiffs filed the affidavit of Mark Quarles, a professional geologist.  In his Affidavit, Mr. Quarles stated that:

> For a very old release of petroleum hydrocarbons that is in an area of high groundwater flow rate, it is possible that VOC's [volatile organic compounds] and SVOC's [semi-volatile organic compounds] would experience biodegradation and dilution because of the potential age of the release and the high flow rates of

carbonate (limestone) aquifers. Therefore biodegradation could in part, explain the absence of VOC's and SVOC's in the sample.

In summary, Mr. Quarles' Affidavit stated that there was a possibility that compounds found in petroleum hydrocarbons had been dissipated by bio degradation. Mr. Quarles does not state to any degree of professional certainty that the underground storage tanks more likely than not caused the contamination of the well.

The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when speculation or conjecture or the possibilities are at best evenly balanced, it becomes the duty of the court to direct a verdict in favor of the defendant. *Lindsey v. Miami Development Corporation*, 689 S.W.2d 856 (Tenn. 1985). The Affidavit of Mark Quarles is insufficient to establish causation.

The Plaintiffs also attempt to rely upon the deposition testimony of Mr. Christopher Ian Barrett to create a disputed fact regarding causation. Mr. Barrett, a geologist for the Tennessee Department of Conservation, authored an e-mail message stating that the "two fill ports from underground storage tanks are located approximately fifteen feet from the well water, indicating that these UST[s] are the most likely source of contamination." However, this e-mail was authored prior to the issuance of Dr. Crowder's opinion that there was no petroleum contamination of the well water. Later in Mr. Barrett's deposition he agreed with Dr. Crowder's opinion regarding the well water.

In summary, the Plaintiffs have failed to establish that the underground storage tanks caused the contamination of the well water.

Defendants John T. Mountain and Melody Mountain filed Affidavits that they had no actual knowledge of the alleged defects to the property including any significant defects in the interior walls, ceiling, plumbing, sewer/septic system, electrical system or basement. Also filed, as an Exhibit to Defendants' Motion for Summary Judgment, was a Tennessee Residential Property Condition Disclosure and a Lead-Paint Disclosure form. The Lead-Paint Disclosure form indicated that Defendants had no knowledge of "lead-based paint and/or lead-based paint hazard in the housing." This document was initialed by Plaintiff Robin Stanfill who also checked the box wherein purchasers waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

"For a seller of real estate to be liable under the theories of either fraudulent misrepresentation or failure to disclose, he must have actual knowledge of the defect." *West v. Logan*, 1992 WL 64780 (Tenn. Ct. App.). The Plaintiffs have failed to show that Defendants John T. Mountain and Melody Mountain had actual knowledge of the alleged defects. Therefore, we affirm the trial court's Order granting summary judgment for Defendants John T. Mountain and Melody Mountain.

Defendant Carl Brooks filed an Affidavit indicating that he had no actual knowledge of the alleged defects located on the property.  Tennessee Code Annotated § 62-13-403(2) provides that real estate brokers have a duty to disclose to each party to the transaction any adverse facts to which the licensee has actual notice or knowledge.  The Plaintiffs have offered no proof to rebut the lack of knowledge of the alleged defects on the part of Defendant Carl Brooks.  Accordingly, we affirm the judgment of the summary judgment in favor of Defendant Carl Brooks.

Finally, the Plaintiffs assert that the trial court erred in granting discretionary costs to the Defendants.  The trial court granted discretionary costs in the amount of $8,780.54 in favor of Defendants John T. Mountain and Melody Mountain.  "The intent behind rule 54.04 is that reasonable and necessary costs in the preparation and trial of the case may be assessed as discretionary costs by the trial court." *Lock v. National Union Fire Ins. Co.*, 809 S.W.2d 483, 490 (Tenn. 1991).  "Awarding costs in accordance with T. R. Civ. P. 5404(2), like awarding other costs, is within the trial court's reasonable discretion." *Perdue v. Green Branch Mining Co.*,  837 S.W.2d 56, 60 (Tenn. 1992).  Because the decisions are discretionary, reviewing courts are generally disinclined to second guess a trial court's decision unless the trial court has abused its discretion. *Woodlawn Memorial Park, Inc. v. Keith*, 70 S.W.3d 691, 698 (Tenn. 2002).  The Affidavits filed in support of the motion for discretionary cost are clearly items contemplated by Rule 54.02.  Accordingly, we affirm the award of discretionary costs.

We affirm the judgment of the trial court and assess cost against the Plaintiffs/Appellants.

_____
JON KERRY BLACKWOOD, SENIOR JUDGE

-5-