IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 17, 2014 Session

**IN RE JACKSON G. ET AL.**

**Appeal from the Chancery Court for Hickman County**
**No. 12-CV-4849      James G. Martin, III, Judge**

_____

**No. M2013-02577-COA-R3-PT - Filed August 4, 2014**

_____

The father of two minor children appeals the trial court's decision to terminate his parental rights. The trial court terminated the father's parental rights upon finding two grounds of abandonment, failure to visit and failure to support, and finding that terminating the father's parental rights would be in the children's best interests. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, J.J., joined.

Douglas Thompson Bates, IV, Centerville, Tennessee, for the appellant, Allen G.[1]

Melanie Totty Cagle, Centerville, Tennessee, for the appellees, Daniel E. and Mary E.

**OPINION**

Mary E. ("Mother") and Allen G. ("Father") are the parents of Jackson G., born January 2008, and Juniper G., born May 2009. Mother and Father began dating while they were both working at a Sonic restaurant near Centerville, Tennessee. Mother and Father moved in together and lived in a romantic relationship for two years. Father ended their relationship and moved out of the home while Mother was pregnant with Juniper. Three months later, Father moved back into the home with Mother as a roommate; Mother and Father did not resume a romantic relationship. A year later, Mother and Father were evicted from the home for failure to pay rent, and they have not resided together since.

---

[1]This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

On June 29, 2010, Mother filed a petition to establish parentage, set child support, and establish a Permanent Parenting Plan. The juvenile court ruled that Father was the biological and legal father of the children and ordered Father to pay $249 per month in child support. The court also adopted a Permanent Parenting Plan that split parenting time almost equally between Mother and Father; however, the children continued to reside with Mother because Father did not have appropriate housing.

Father's support of and involvement in the children's lives diminished following the entry of the juvenile court's order. Father made the first two child support payments before ceasing payments in November 2010. The State, on behalf of Mother, filed two petitions for criminal contempt in 2011 against Father for failure to pay child support; Father agreed to a payment plan in both instances, but he failed to pay in accordance with either plan.

Father's visits with the children also became infrequent and not in accordance with the Permanent Parenting Plan. Father's last visit with the children occurred on August 7, 2011. Father did not contact or visit the children again until March 26, 2013, which was months after the commencement of these proceedings.

On September 27, 2012, Mother and Dan E., whom Mother married in November 2011, filed a petition to terminate Father's parental rights and for Dan E. to adopt both children, alleging two grounds for termination: (1) failure to visit; and (2) failure to support financially. Mother and Dan E. also alleged that terminating Father's parental rights would be in the children's best interests. Thereafter, the case was set to be tried on July 3, 2013.

Four witnesses testified at trial: Mother; her husband, Dan E.; Father; and his friend, Micah Tidwell. Mother testified that Father had not provided any support for the children since October 2010 and that his last visit with the children prior to the filing of these proceedings was on August 7, 2011. She also testified that the children are in a safe and loving home that she and her husband Dan E. provide for them. She testified that the children love their step-father, who they refer to as "dad", and Dan E. testified that he wishes to adopt the children.

Father testified that his failure to support and to visit the children was due in part to depression he experienced from August 2011 to mid-2012, but he did not seek treatment or counseling. He also testified that he had experienced a previous episode of severe depression prior to his relationship with Mother. As he explained, after attempting suicide in 2002, he was admitted to a facility in Middle Tennessee for four days, and although he was provided medication and counseling during his stay, after his release he did not continue treatment or take the medication that had been provided. He also admitted that he did not seek treatment for his depression at any time relevant to these proceedings.

Father testified that he did not have the means to support the children and described his employment history as follows. Shortly after Father began dating Mother, he left Sonic and started working as a door-to-door salesman for a Kirby Vacuum Cleaners franchise owned by David Wallace. Father lost this job in December 2010 and did not work again until July 2011, when he started working for another Kirby franchisee, Junior Gray. Father did not receive an income from Mr. Gray or any other source during this time period. In December 2012, Father went back to work for Mr. Wallace. Father's job with Mr. Wallace requires him to travel to the Midwest on a weekly basis.

As for not visiting his children, Father contended at trial that Mother prevented him from visiting the children based on one conversation with Mother in the fall of 2011. Father stated that he approached Mother while she was working at Sonic and asked to see the children, to which she replied that he needed to catch up on his child support payments before visiting the children. Mother refuted Father's testimony, stating that she told him that the child support did not matter and that he should just visit the children.

Father and his friend Micah Tidwell, who he had worked for at Sonic, testified regarding Father's housing situation. Father testified that after he and Mother were evicted from their home, Father "slept over" at four different friends' houses from time to time before becoming a fixture on Mr. Tidwell's couch starting in late 2011; Father continues to reside with Mr. Tidwell when Father is not traveling for work. Father does not pay Mr. Tidwell rent or utilities, and he has no plans to obtain his own housing. Mr. Tidwell confirmed the housing arrangement with Father. Upon the close of proof on July 3, 2013, by agreement of the parties closing arguments were set for August 13, 2013, at which time counsel for all parties and the guardian ad litem made closing arguments.

One month later, on September 18, 2013, the trial court entered its final order in which it found Father not to be a credible witness, that Father abandoned his children by willfully failing to visit and by willfully failing to support them financially, and that terminating his parental rights was in the children's best interests. Accordingly, the court entered judgment terminating Father's parental rights. Father filed a timely notice of appeal.[2]

Father presents four issues for our review: (1) whether the trial court's failure to enter an order within 30 days renders the judgment void; (2) whether the trial court erred in finding that Father abandoned the minor children pursuant to Tennessee Code Annotated § 36-1-113(g)(1) by willfully failing to visit the children and by willfully failing to support the children; (3) whether the trial court erred in finding that terminating Father's parental rights

---

[2]The trial court also granted Dan E.'s request for adoption, which ruling is dependent on the outcome of this appeal and is not an issue in this appeal.

is in the children's best interests; and (4) whether the trial court abused its discretion in allocating both the entire guardian ad litem fee and portions of Mother's litigation costs to Father.

## STANDARD OF REVIEW

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c) (2013); *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013) (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). When a trial court has made findings of fact, we review the findings de novo on the record with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *In re Adoption of Angela E.*, 402 S.W.3d at 639 (citing *In re Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013)). We next review the trial court's order de novo to determine whether the facts amount to clear and convincing evidence that one of the statutory grounds for termination exists, and if so, whether the termination of parental rights is in the best interests of the children. *In re Adoption of Angela E.*, 402 S.W.3d at 639-640 (citing *Taylor B.W.*, 397 S.W.3d 105, 112 (Tenn. 2013)). Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* at 640 (internal citations omitted).

## ANALYSIS

### I. TENNESSEE CODE ANNOTATED § 36-1-113(k)

Father asks us to vacate the trial court's decision to terminate his parental rights because the trial court did not comply with the timing requirements of Tennessee Code Annotated § 36-1-113(k). Father relies on the provision that the trial court "shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." Tenn. Code Ann. § 36-1-113(k). We find Father's reliance on this statue for the purpose of vacating the trial court's judgment is misplaced.

The statute reads as follows:

The court shall ensure that the hearing on the petition takes place within six (6) months of the date that the petition is filed, unless the court determines an extension is in the best interests of the child. The court shall enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing. If such a case has not been completed within six (6) months from the date the petition was served, the petitioner or

respondent shall have grounds to request that the court of appeals grant an order expediting the case at the trial level.

Tenn. Code Ann. § 36-1-113(k).

Our first observation is that the statute does not afford the remedy Father seeks, that of vacating the trial court's judgment merely because it was entered more than thirty days following the conclusion of the hearing or more than six months after the petition was served on Father. Moreover, a remedy is provided in the statute, that being a request to expedite the proceedings, and the record is silent as to whether Father sought that remedy. Further, our courts have addressed this issue before and none have vacated a trial court judgment due to untimeliness. For example, in *In re Isobel V.O.*, we rejected the same request upon the following reasoning:

> Father additionally asserts that the trial court erred by failing to enter an order within 30 days of the conclusion of the hearing of the matter as required by Tennessee Code Annotated § 36-1-113[(k)], and requests that this Court fashion "some appropriate remedy" in the absence of a statutory remedy. Before turning to the substantive issues presented for our review, we address Father's assertion that the trial court's procedural error provides a basis for reversal . . . .
>
> In this case, Father does not assert that the trial court failed to make findings of fact and conclusions of law. Indeed, the trial court's order in this case contains numerous findings and conclusions of law. Rather, Father asserts the trial court erred by failing to enter its order within 30 days as provided by the statute. We repeatedly have held that the time frame contained in the statute reflects the legislature's intent that parental termination cases be handled in an expeditious manner and is not mandatory. *In re Zada M.*, No. E2010-02207-COA-R3-PT, 2011 WL 1361575, at *5 (Tenn. Ct. App. Apr. 11, 2011) (no perm. app. filed) (citing *In re M.R.W.*, No. M2005-02329- COA-R3-PT, 2006 WL 1184010 (Tenn. Ct. App. May 3, 2006)). We decline Father's request that this Court fashion a remedy for the trial court's failure to enter an order within 30 days as a matter best left to the legislature. We next turn to whether clear and convincing evidence supports the termination of parental rights in this case.

*In re Isobel V.O.*, No. M2012-00150-COA-R3-PT, 2012 WL 5471423, at *4 (Tenn. Ct. App. Nov. 8, 2012).

In furtherance of the statutory directive, our courts have recognized that delays in the final resolution of parental termination proceedings affect the parties' rights to "a prompt, just adjudication of their interests and rights." *In re Ella M.I.*, No. M2013-01543-COA-R3-PT, 2014 WL 1778275, at *4 (Tenn. Ct. App. Apr. 30, 2014). We also recognize that this directive is not limited to the trial courts; indeed, the General Assembly has additionally instructed the appellate courts to expedite appeals of termination proceedings. *See* Tenn. Code Ann. § 36-1-124.[3] Nevertheless, the statute does not require nor contemplate vacating a trial court's judgment based merely on the untimely filing of the trial court's findings of fact and conclusions of law. Moreover, a trial court's failure to enter an order within the time limit prescribed by Tennessee Code Annotated § 36-1-113(k) does not result in the loss of the trial court's jurisdiction. *In re M.R.W.*, No. M2005-02329-COA-R3-PT, 2006 WL 1184010, at *3 (Tenn. Ct. App. May 3, 2006).

The petition was filed on September 27, 2012. The trial began on July 3, 2013, and was continued following the close of the proof until closing arguments could be heard on August 13, 2013. The trial court entered its final order with specific findings of fact and conclusions of law on September 18, 2013. Although the final order with the trial court's specific findings was entered 35 days after the conclusion of the trial, not 30 days as the statute directs, we find no justification to vacate the judgment due to this modest delay. *See*

---

[3] Tenn. Code Ann. § 36-1-124 provides:

(a) In all cases where the termination of parental rights or adoption of a child is contested by any person or agency, the trial court shall, consistent with due process, expedite the contested termination or adoption proceeding by entering such scheduling orders as are necessary to ensure that the case is not delayed, and such case shall be given priority in setting a final hearing of the proceeding and shall be heard at the earliest possible date over all other civil litigation other than child protective services cases arising under title 37, chapter 1, parts 1, 4 and 6.

(b) In all cases that are appealed from the decision of a trial court, the appellate court shall, consistent with its rules, expedite the contested termination of parental rights or adoption case by entering such scheduling orders as are necessary to ensure that the case is not delayed, and such case shall be given priority over all other civil litigation in reaching a determination on the status of the adoption, other than child protective services cases arising under title 37, chapter 1, parts 1, 4 and 6.

(c) It is the intent of the general assembly that the permanency of the placement of a child who is the subject of a termination of parental rights proceeding or an adoption proceeding not be delayed any longer than is absolutely necessary consistent with the rights of all parties, but that the rights of the child to permanency at the earliest possible date be given priority over all other civil litigation other than child protective services cases arising under title 37, chapter 1, parts 1, 4 and 6.

*In re Ella M.I.*, 2014 WL 1778275, at *4) (finding that a much lengthier delay between the hearing and entry of the final order was not a basis for vacating the court's order). Moreover, this record provides no indication that any party sought to expedite the proceedings prior to the commencement of the final hearing or thereafter. For the foregoing reasons we find no basis to vacate the order as Father requests.

For the above reasons, we find no reason to vacate the judgment on this ground and follow the lead stated in *In re Isobel V.O.*, 2012 WL 5471423, at *4, and turn our attention to whether the record contains clear and convincing evidence that supports the termination of Father's parental rights in this case.

## II. GROUNDS FOR TERMINATION

The trial court found that the petitioners proved two grounds upon which Father's parental rights could be terminated: (1) abandonment for willful failure to visit; and (2) abandonment for willful failure to support financially.

Tennessee Code Annotated § 36-1-113(g) authorizes the initiation of termination of parental or guardianship rights on grounds, which are cumulative and non-exclusive, including: "(1) Abandonment by the parent or guardian, as defined in § 36-1-102." Tenn. Code Ann. § 36-1-113(g)(1) (2013). The definition of "abandonment," as applicable here, which must be willful, means:

> For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i) (2013).

A parent's willful conduct is an essential element of the statutory definition of abandonment. *In re C.T.B.*, No. M2009-00316-COA-R3-PT, 2009 WL 1939826, at *4 (Tenn. Ct. App. July 6, 2009); *In re Audrey S.*, 182 S.W.3d 838, 863 (Tenn. Ct. App. 2005). "Willful" conduct, as used in the statute, consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. *Audrey S.*, 182 S.W.3d at 863 (citations omitted). "Conduct is 'willful' if it is the product of free will rather than coercion." *Id.* A parent's failure to visit or support a child is "willful" when a parent "is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no

justifiable excuse for not doing so." *Id.* at 864 (citing *In re M.J.B.*, 140 S.W.3d 643, 654 (Tenn. Ct. App. 2004)).

## A. Failure to Visit

The trial court found that Father willfully failed to visit his children from May 27, 2012, to September 27, 2012, which is the four month period preceding the filing of Mother and Dan E.'s petition to terminate Father's parental rights. It is undisputed that Father last visited the children on August 7, 2011, and at no time visited the children during the relevant time period. The issue here is whether his failure to visit was willful.

Father contends that his failure to visit the children was not "willful" as required by the statute. Tenn. Code Ann. § 36-1-102(1)(A)(i) (2013). Father first argues that his depression from August 2011 to mid-2012 did not allow him to visit the children. Father testified that he did not want his depression to be a bad influence on the children since he was unable to get out of bed, maintain a proper sleep schedule, shower, or eat properly during the relevant time period. Father's second argument is that his conversation with Mother at Sonic in the fall of 2011 prevented him from seeing the children. Father left Sonic that day believing that Mother would allow him to visit with the children only if he caught up on his child support payments; at the time, Father was almost a year behind.

The record clearly and convincingly supports the trial court's determination that Father willfully failed to visit the children during the relevant period. A key finding by the trial court was that Father was not a credible witness as it pertained to the extent of his claimed depression and his recollection of his conversation with Mother at the Sonic when she allegedly refused to allow him to visit the children. This is because considerable deference is accorded to the trial court's factual findings on issues of witness credibility. *Woodward v. Woodward*, 240 S.W.3d 825, 828 (Tenn. Ct. App. 2007).

The trial court found that Father's testimony was not credible as it pertained to his self-diagnosed depression from July 2011 until mid-2012, when he did not visit the children, and that his depression did not prevent him from waking up, eating, showering, or driving as far as Clarksville to work with Mr. Gray on a daily basis. The trial court found that Father's testimony was in direct conflict with Father's abilities to function as evidenced by his daily routine while working for Mr. Gray. As for the conversation at Sonic with Mother, which was a mere one time, three-minute conversation, the court found Father's recollection of the conversation not credible and also found it insufficient to thwart Father from visiting the children for the following two years. The trial court determined that Mother's recollection of the Sonic conversation was credible.

Because of the trial court's credibility determinations, as well as the evidence in the record, the record fully supports the trial court's rejection of Father's arguments that his failure to visit the children was not willful and the finding that Father's failure to visit the children was the product of his own free will. *Audrey S.*, 182 S.W.3d at 863.

For the foregoing reasons, we affirm the trial court's finding that Father willfully failed to visit the children during the relevant time period.

## B. Failure to Support Financially

The trial court found that the petitioners also proved the ground of abandonment for failure to support the children financially. Father does not dispute that he did not pay child support during the relevant time period; instead, he insists his failure to support was not willful.

Father testified that he was financially unable to pay child support during the relevant time period. While Father did work for Mr. Gray during the relevant time period, Father did not receive an income from Mr. Gray or any other source. Father testified that he did not want to work a nine to five job because the Kirby Vacuum business was "all that he knew." Father and Mr. Tidwell, the manager of Sonic, both testified that they discussed the possibility of Father going back to work at Sonic, but Father was concerned about switching to a job with decreased earning potential and having his wages garnished due to his debts. Mr. Tidwell expressed concerns about housing one of his employees if Father did go back to work at Sonic.

"A parent who fails to support a child because he or she is financially unable to do so is not willfully failing to support the child." *In re M.B.*, No. M2005-02120-COA-R3-PT, 2006 WL 1082827, at *5 (Tenn. Ct. App. Apr. 25, 2006) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 n.7 (Tenn. Ct. App. Nov. 25, 2003)). In cases where we find that a parent is financially unable to pay child support, the parent is in a situation where they do not have the earning capacity to support themselves and pay child support. For example, in *In re Jaleia M.R.*, the mother appealed the termination of her parental rights on the ground of willfully failing to support. *In re Jaleia M.R.*, No. M2010-00761-COA-R3-PT, 2011 WL 1166838, at *4 (Tenn. Ct. App. Mar. 29, 2011). The mother's friends, who were caring for the child at the time, brought the proceedings to terminate the mother's parental rights and adopt the child. *Id.* at *2. The mother worked at a video store during the relevant four month period and earned the minimum hourly wage. *Id.* at *6. While the mother did not pay support during the four month period, most of her income would go to the needs of her family living with her, which included her three other children that were not involved in the proceedings. *Id.* We found that the mother did not

willfully fail to financially support her child due to her low income and attempt to support her family of four. *Id.* The mother's complete inability to support the child led us to conclude that mother's failure to support was not willful as required by Tennessee Code Annotated § 36-1-102(1)(A)(i). *Id.*

The facts of this case, however, are distinguishable from those in *Jaleia M.R.* For starters, unlike the mother in *Jaleia M.R.* who was attempting to support other minor children, Father had no obligation, legal or moral, to support anyone but the two children at issue in this case, and he failed to do so. Although Father was not earning an income during the relevant time period, he voluntarily remained at a job where he earned no pay despite having the option to work at Sonic, or elsewhere, to earn an income. Mr. Tidwell testified that he was willing to re-employ Father at Sonic; however, he did not want Father to continue to live with him while he was a Sonic employee. He also testified that he thought the low earning potential of a job at Sonic was one of Father's excuses to not work. Moreover, Father testified that he did not want a job, such as Sonic, where most of his paycheck would be garnished to pay creditors.

Father was aware of the juvenile court's 2010 order that required him to pay child support; Father followed the order for the first two child support payments. Thereafter, he made no support payments. Moreover, in response to two contempt petitions for non-payment of support, Father agreed to two payment plans in 2011and, yet, failed to comply with either order or the initial support order.

The trial court found it unreasonable for Father to voluntarily remain at a job with no income for 18 months while having the ability to obtain a job with an income during the relevant time period. The record contains evidence that clearly and convincingly supports this finding. Accordingly, we affirm the trial court's finding that Father willfully failed to support the children financially during the relevant period.

### III. BEST INTERESTS OF THE CHILDREN

The General Assembly has provided a list of factors for the court to consider when conducting an analysis of the best interests of the children. *See* Tenn. Code Ann. § 36-1-113(i)(1)-(9) (2013). The nine statutory factors, which are well known and need not be repeated here, are not exclusive or exhaustive, and other factors may be considered by the court. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Moreover, not every statutory factor need apply; a finding of but a few significant factors may be sufficient to justify a finding that termination of the parent-child relationship is in the children's best interests. *See id.* The children's best interests are to be determined from the perspective of the children rather than the parent. *See State Dep't of Children's Servs. V.L.H.*, No. M2007-

00170-COA-R3-PT, 2007 WL 2471500, at *7 (Tenn. Ct. App. Aug. 31, 2007) (citing *White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004)).

The trial court found that terminating Father's parental rights would be in the children's best interests. The trial court was concerned that Father would create instability within the children's lives. Father failed to pay the vast majority of his court ordered child support payments and failed to visit the children over a two-year period. While Father did resume visitation with the children on March 26, 2013, the trial court determined that these visits were not frequent enough or long enough to establish a meaningful relationship with the children. Father's new job with Mr. Wallace requires him to be out of the state for the majority of the week, and Father had no plan to obtain suitable housing for the children to reside with him. The court was also troubled by Father's failure to seek treatment of his mental condition and the resulting adverse impact on the children's future with him. We share the same concerns.

The children are in a loving home with Mother and Dan E. The children have established a loving relationship with Dan E. The children call Dan E. "dad," make Dan E. Father's Day cards, and make Dan E. tuck them into bed at night. The children are in a stable family where they can rely on both Mother and Dan E. to be available when needed.

The trial court found that terminating Father's parental rights is in the children's best interests; the record fully supports this finding. Accordingly, we affirm the trial court's determination that termination of Father's parental rights is in the children's best interests.

IV. AWARD OF DISCRETIONARY COSTS

Father's final issue on appeal is whether the trial court abused its discretion in allocating both the entire guardian ad litem fee and portions of Mother's costs for litigation to him. A court's decision to allocate guardian ad litem fees, litigation costs, and other discretionary fees is solely within the court's discretion. Tenn. R. Civ. P. 54.04(2). Trial judges are afforded a great deal of discretion when considering a motion for discretionary costs, and appellate courts will apply an abuse of discretion standard when reviewing the court's decision to grant or deny motions to allocate these costs. *Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 35 (Tenn. Ct. App. 2002); *In re Linville*, No. M2000-01097-COA-R3-CV, 2000 WL 1785991, at *5 (Tenn. Ct. App. Dec. 7, 2000). A trial court's decision to grant discretionary costs will be upheld as long as it is not clearly unreasonable. *Jefferson*, 104 S.W.3d at 35. A trial court abuses its discretion when it applies an incorrect legal standard or reaches a clearly unreasonable decision, either of which causes an injustice to the complaining party. *Woodlawn Mem'l Park, Inc. v. Keith*, 70 S.W.3d 691, 698 (Tenn. 2002); *Jefferson*, 104 S.W.3d at 35.

-11-

We find no abuse of discretion of the trial court's decision to assess the guardian ad litem fee and portions of Mother's litigation costs to Father. The trial court found that Mother was the prevailing party, that Father is able to bear the costs more than Mother, and that Father was in a better financial position than he was before and that Mother is in the same financial position as she was before. We affirm the trial court's decision to assess costs to Father.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Father.

_____
FRANK G. CLEMENT, JR., JUDGE

-12-