# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
### May 29, 2025 Session

## JO CAROL EDWARDS v. PEOPLEASE, LLC, ET AL.

**Appeal by Permission from the Workers' Compensation Appeals Board
Court of Workers' Compensation Claims at Jackson
No. 2020-07-0656   Allen Phillips, Judge**

_____

### No. W2024-01034-SC-R3-WC
_____

In this appeal, we clarify the standard of review in workers' compensation cases. We also explain when an aggravation injury is compensable under Tennessee workers' compensation law. Plaintiff Jo Carol Edwards sought medical coverage and disability benefits after a work-related accident aggravated her pre-existing arthritis. Following a lengthy administrative process, the Court of Workers' Compensation Claims awarded Ms. Edwards medical coverage and disability benefits. The Workers' Compensation Appeals Board reversed. Ms. Edwards appealed. We hold that the standard of review for factual findings in Workers' Compensation cases is de novo on the record with a presumption of correctness unless the preponderance of the evidence shows otherwise. The standard of review for factual findings applies regardless of whether the finding is based on live testimony or deposition testimony. We also hold that an "aggravation" injury under workers' compensation law does not require proof of a permanent change or a permanent worsening of conditions to be compensable. Instead, an aggravation injury is compensable when an employee shows, to a reasonable degree of medical certainty, that the aggravation injury primarily arose out of and in the course and scope of employment. This means that an employee must show that the employment contributed more than fifty percent in causing the aggravation. Then, the employee must prove, by a reasonable degree of medical certainty, that the aggravation contributed more than fifty percent in causing death, disablement or need for medical treatment. Applying these definitions to the record before us, we reverse the decision of the Appeals Board, and reinstate the award granted by the Court of Workers' Compensation Claims in its December 12, 2023 Order.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Workers' Compensation
Appeals Board Reversed**

MARY L. WAGNER, J., delivered the opinion of the Court, in which JEFFREY S. BIVINS, C.J., and HOLLY KIRBY, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Charles L. Hicks, Camden, Tennessee, for the appellant, Jo Carol Edwards.

Stephen B. Morton, Brentwood, Tennessee, for the appellee, Peoplease, LLC.

**OPINION**

## I. FACTUAL AND PROCEDURAL BACKGROUND

*Ms. Edwards' Accident and Medical Treatment*

On August 14, 2020, Jo Carol Edwards was driving a truck for Peoplease, LLC. One of her tires blew out, sending her vehicle down an embankment where she crashed into a bridge. During the accident, Ms. Edwards' knees struck a panel underneath the truck's dashboard. This case is about the compensability of Ms. Edwards' resulting knee injuries.[1]

Immediately after the accident, Ms. Edwards received x-rays and diagnostic tests at the University of Mississippi Medical Center to address her knee pain. She was also instructed to follow up with her primary care provider about the knee pain. Ms. Edwards had two subsequent visits with her primary care provider at Fast Pace Urgent Care Clinic, one on August 20, 2020, and another on August 24, 2020. Ms. Edwards did not mention knee pain in either follow-up visit.

On August 25, 2020, Ms. Edwards selected Dr. Jason Hutchison, a board-certified orthopedic surgeon, as her treating physician.[2] Ms. Edwards met with Dr. Hutchison on September 14, 2020, and complained of bilateral knee pain following the truck accident. This was the first time Ms. Edwards reported knee pain since her emergency room visit immediately after the accident. Dr. Hutchison took x-rays and diagnosed Ms. Edwards with end-stage tricompartmental arthritis in both of her knees.

Dr. Hutchison also opined that Ms. Edwards had knee arthritis prior to the truck accident. To ease her pain, Dr. Hutchison provided Ms. Edwards with a steroid injection to her left knee. Dr. Hutchison informed Ms. Edwards that workers' compensation insurance would not cover her treatment because the work-related accident was not responsible for her severely arthritic knees.

---

[1] Ms. Edwards filed for benefits for other alleged injuries, but the parties addressed only her knee injuries on appeal. *Edwards v. Peoplease*, No. 2020-07-0656, 2024 WL 3311539, at *5 n.3 (Tenn. Workers' Comp. App. Bd. July 2, 2024).

[2] An employer must provide at least three physicians from which the employee chooses a treating physician. Tenn. Code Ann. § 50-6-204(a)(3)(A)(i) (Supp. 2020).

2

On September 24, 2020, Ms. Edwards visited Dr. Timothy Sweo for a second opinion. Dr. Sweo is a board-eligible orthopedic surgeon who was also approved by Peoplease to provide treatment. Ms. Edwards reported stiffness in her knees and pain while walking. After reviewing her x-rays, Dr. Sweo opined that Ms. Edwards had severe knee arthritis. Dr. Sweo discussed knee replacement surgery with Ms. Edwards because steroid injections had failed to relieve Ms. Edwards' knee pain.

On November 17, 2020, Ms. Edwards returned to Dr. Sweo. Ms. Edwards again complained of significant pain in her knees and asserted that her left knee hurt slightly more than her right knee. Dr. Sweo scheduled an MRI, which Ms. Edwards received on December 3, 2020. The MRI showed severe arthritis throughout Ms. Edwards' left knee and a fracture in her left knee. Dr. Sweo indicated that the fracture resulted from the truck accident.

Dr. Sweo recommended a total left-knee replacement. Prior to the surgery, Ms. Edwards revisited Dr. Hutchison for an evaluation of her right knee at the request of Peoplease. During this visit, Dr. Hutchison again opined that Ms. Edwards' knee arthritis pre-dated the accident, though the accident "may have caused a significant exacerbation of the arthrosis."

In February 2021, Ms. Edwards received a left total-knee replacement. After her left knee replacement, Ms. Edwards began experiencing increased pain in her right knee and discussed a right-knee replacement with Dr. Sweo. Ms. Edwards was denied coverage for both knee surgeries. Ms. Edwards filed a petition for expedited benefits determination with the Workers' Compensation Claims Court ("Trial Court") in December 2021.

*Procedural History*

*Initial Benefits Determination*

Ms. Edwards and Peoplease deposed Drs. Hutchison and Sweo to prepare for the Trial Court's expedited benefits-determination hearing. Unlike Ms. Edwards, who testified in-person before the Trial Court, neither doctor provided live, in-person testimony. Despite Ms. Edwards' testimony to the contrary, Dr. Hutchison believed that Ms. Edwards was symptomatic prior to the accident. Based on this belief, Dr. Hutchison concluded that Ms. Edwards' knee pain was "an exacerbation of [arthritis] symptoms caused by the accident" that was not "compensable . . . under [Tennessee] Workers' Compensation [Law]." Regarding the fracture uncovered by Dr. Sweo, Dr. Hutchison deemed it unimportant, as Ms. Edwards' knee-related symptoms stemmed from her arthritis, not the fracture. Dr. Hutchison testified that even if Ms. Edwards' knee pain was "related to the accident," her "underlying pathology [was] . . . severely arthritic knees."

In contrast, Dr. Sweo determined that "[Ms. Edwards] had to have [the surgery] . . . because . . . the accident [caused] . . . a fractured bone that didn't heal." Like Dr. Hutchison, Dr. Sweo believed that Ms. Edwards likely experienced symptoms prior to the accident. Dr. Sweo conceded that it was possible for Ms. Edwards to be asymptomatic and fulfilling her job roles, despite having severe knee arthritis. This squares with Ms. Edwards' testimony that she had not experienced pain in her knees prior to the truck accident. But Dr. Sweo also thought that the accident caused "changes [to] the motion in the knee" that resulted in Ms. Edwards' post-accident symptoms. Dr. Sweo concluded that the need for both knee replacements was "most likely . . . greater than 51 percent" caused by the work accident.

Ms. Edwards provided the only live, in-person testimony at the benefits-determination hearing. The Trial Court found Ms. Edwards credible and characterized her testimony as "honest [and] forthcoming." The Trial Court also "observed [Ms. Edwards] limping and using a cane."

The Trial Court awarded Ms. Edwards benefits upon finding that she was likely to prevail on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (Supp. 2020) ("Upon motion of either party . . . a workers' compensation judge may . . . hear disputes over issues . . . concerning the provision of temporary disability or medical benefits on an expedited basis and enter an interlocutory order upon determining that the injured employee would likely prevail at a hearing on the merits."). The Trial Court found that Dr. Hutchison misapprehended Tennessee law by concluding that the exacerbation of a pre-existing condition is not compensable under Tennessee workers' compensation law. The Trial Court agreed with Dr. Sweo that the truck accident caused the need for Ms. Edwards' knee surgeries. Accordingly, the Trial Court ordered Peoplease to reimburse the cost of Ms. Edwards' left total knee replacement, authorize the right knee replacement, pay past and ongoing temporary total disability benefits, and reimburse her for mileage.

*Interlocutory Appeal*

Peoplease challenged the Trial Court's expedited hearing order in an interlocutory appeal. On appeal, the Workers' Compensation Appeals Board ("Appeals Board") affirmed in part and reversed in part. The Appeals Board held that Dr. Sweo failed to explain how Ms. Edwards' knee fracture contributed to the need for her left knee replacement and ultimately did not support his conclusion that "the work accident caused more than 50 percent of the need for bilateral total knee replacements." The Appeals Board also held that Ms. Edwards did not rebut the statutory presumption afforded to Dr. Hutchison's causation opinions under Tennessee Code Annotated Section 50-6-102(12)(E).

The Appeals Board affirmed the Trial Court's finding that Ms. Edwards was likely to prevail on the compensability of the aggravation of her pre-existing condition. Accordingly, the Appeals Board affirmed the order "to the extent that Peoplease owed

4

medical benefits to treat symptoms from the accident[,] short of performing knee replacements." The Appeals Board reversed the Trial Court's finding that Ms. Edwards was likely to show that the truck accident was the primary cause for her knee replacements. Therefore, it reversed the order for reimbursement for past medical expenses and mileage related to the left knee replacement, for medical expenses for the right knee replacement, for payment of temporary disability payments for the left knee, and for further treatment. The Appeals Board remanded the case to the Trial Court for the conclusion of the matter.

*Benefits Determination on Remand*

On remand, the parties deposed new experts and re-deposed Dr. Hutchison.[3] In his second deposition, Dr. Hutchison again stated that the truck accident did not cause the need for Ms. Edwards' knee surgery. Dr. Hutchison based his opinion, in part, on his belief that Ms. Edwards likely experienced symptoms prior to the accident, despite her testimony and work history to the contrary. But Dr. Hutchison also testified that he would not have recommended knee replacement surgery if Ms. Edwards was asymptomatic.

Peoplease hired Dr. Claiborne Christian, an orthopedic surgeon, to perform an independent medical evaluation of Ms. Edwards in August 2022. Dr. Christian testified that the truck accident merely exacerbated Ms. Edwards' symptoms, which he did not consider compensable. Moreover, Dr. Christian believed that "an aggravation is synonymous with an anatomic change" under workers' compensation law, and that Ms. Edwards had not suffered a permanent anatomic change from the accident. Like Dr. Hutchison, Dr. Christian believed that Ms. Edwards' arthritis, not the truck accident, necessitated her knee surgery. Dr. Christian also testified that he would not have recommended knee replacement surgery if Ms. Edwards was asymptomatic.

Ms. Edwards hired Dr. Lawrence Schrader, another orthopedic surgeon, to perform an additional independent medical evaluation in September 2022. Dr. Schrader disagreed with Drs. Hutchison and Christian's conclusions. Dr. Schrader noted that Ms. Edwards had no history of limited range of motion or knee pain prior to the accident. Dr. Schrader testified that the aggravation to Ms. Edwards' knees was more likely than not due to the accident.

Dr. Schrader defined an "aggravation injury" to mean "a circumstance or event that permanently worsens a pre-existing underlying condition." Dr. Schrader testified that Ms. Edwards was asymptomatic prior to the accident and became permanently symptomatic

---

[3] The parties did not re-depose Dr. Sweo.

5

after the accident aggravated her underlying arthritis.[4]  Dr. Schrader concluded, to a reasonable degree of medical certainty, that the truck accident more likely than not caused Ms. Edwards' permanent impairments.

Dr. Schrader also discussed other injuries Ms. Edwards alleged that are not before us on appeal.  *See supra*, n. 1 and accompanying text.  Dr. Schrader further testified that, to a reasonable degree of medical certainty, Ms. Edwards had permanent limitations because of her injuries.  Without specifying which injuries caused which limitations, Dr. Schrader testified that, due to her injuries, Ms. Edwards would be limited to sedentary work, would not be able to walk for more than 5 minutes or a distance of more than 50 feet, would be unable to walk on uneven ground, would have difficulty standing for more than 15 or 20 minutes, would be unable to lift more than 5 pounds from floor to waist and waist to mid-chest, would be required to take unscheduled breaks throughout the work day, would be unable to stoop, kneel, crouch, crawl, and would be unable to climb ladders or stairs.

On remand, the Trial Court determined that Dr. Hutchison's causation opinion— that aggravations of pre-existing conditions were not compensable under workers' compensation law—was "incorrect" and that Dr. Christian's causation opinion—that an aggravation injury required an anatomic change—was "flawed."  The Trial Court further determined that Drs. Sweo and Schrader's causation opinions, that the accident was 51 percent or more likely to be the cause of Ms. Edwards' need for knee surgeries, were supported by the evidence.

The Trial Court determined that "Dr. Schrader's opinion . . . follow[ed] Tennessee law and offer[ed] the more probable explanation for Ms. Edwards' knee injuries."  The Trial Court also credited Ms. Edwards' testimony that she did not experience knee issues prior to the accident.  The Court also viewed Ms. Edwards in court and observed her difficulty walking.

Based on these findings, the Trial Court determined that Ms. Edwards had rebutted the presumption in favor of Dr. Hutchison's opinion and "proved by a preponderance of the evidence that the work accident aggravated her knee arthritis."  The Trial Court ordered Peoplease to pay past medical bills related to Ms. Edwards' left knee replacement, current and future medical bills for her right knee, temporary disability benefits, permanent total disability benefits, and discretionary costs.  Peoplease appealed the order.

---

[4] Unlike the other doctors, Dr. Schrader discussed how people often experience symptoms much later than a radiological finding might suggest, which is consistent with Ms. Edwards' testimony that she had not experienced knee pain prior to the accident.

*The Second Appeal*

Two of the three judges of the Appeals Board determined that Ms. Edwards' knee surgeries and resulting disability were not compensable. *Edwards v. Peoplease*, No. 2020-07-0656, 2024 WL 3311539, at *15 (Tenn. Workers' Comp. App. Bd. July 2, 2024). The Appeals Board determined that Ms. Edwards failed to overcome the presumption of correctness afforded to Dr. Hutchison's causation opinion. *Id.* at *13; *see also* Tenn. Code Ann. § 50-6-102(12)(E) (Supp. 2020).

The Appeals Board gave several reasons for its holding. First, the Appeals Board believed that Ms. Edwards' functional limitations must have predated the work accident. *Edwards*, 2024 WL 3311539, at *11. Second, because all testifying physicians agreed that osteoarthritis and disabling pain typically combine to necessitate knee replacement surgery, Ms. Edwards' work accident could not have necessitated knee surgery. *Id.* Third, because total knee replacements are the only effective long-term medical treatment for Ms. Edwards' knee problems, she would have undergone surgery regardless of the truck accident. *Id.* Fourth, "Dr. Sweo and Dr. Schrader . . . gave substantially different reasons for their opinions" that the truck accident caused the need for the knee surgeries. *Id.* Finally, the Appeals Board rejected the Trial Court's reliance on Dr. Schrader's testimony because Dr. Schrader's diagnosis and causation opinions differed substantially from the other three doctors. *Id.* at *13.

The Appeals Board also found that temporary and permanent total disability benefits were inappropriate in the absence of a compensable aggravation injury. *Id.* at *15.

Judge Conner dissented and would have affirmed the Trial Court's order. *Id.* at *16 (Conner, P.J., dissenting). First, Judge Connor found that the evidence did not preponderate against the Trial Court's credibility finding as to Ms. Edwards, noting that the majority did not find an abuse of discretion with regard to this credibility finding. Second, Judge Conner concluded that the preponderance of the evidence supported a finding "that the truck accident caused new symptoms or an increase in symptoms that led to functional limitations" and that this supported the "trial court's finding that [Ms. Edwards] suffered a compensable accident that worsened her pre-existing knee condition." *Id.* Third, Judge Conner concluded by finding that there was sufficient evidence that "(1) the work accident caused the new symptoms or increased symptoms that led to functional limitations; and (2) the need for left knee replacement surgery was hastened by the work accident." *Id.* at *17.

## II. ANALYSIS

We start by clarifying the standard of review in workers' compensation cases.[5]  We then explain the process for evaluating "aggravation" injuries in accordance with the Workers' Compensation Reform Act of 2013.  Finally, we apply the correct standard of review and the proper definition of "aggravation."

### *Standard of Review in Workers' Compensation Claims*

In its opinion reversing the Trial Court's award of benefits, the Appeals Board applied an abuse of discretion standard when reviewing the Trial Court's factual findings based on expert testimony offered by deposition rather than live testimony.  *Edwards*, 2024 WL 3311539, at *10–11.  A different panel of the Appeals Board applied the same standard of review in *Moore v. Beacon Transportation, LLC*.  No. 2018-06-1503, 2021 WL 5105749, at *3 n.1 (Tenn. Workers' Comp. App. Bd. Oct. 29, 2021) (collecting cases).  In that case, one panel member authored a concurring opinion, arguing that a de novo standard should apply when factual findings are based on documentary evidence.  *Id.* at *4–12 (Hensley, J., concurring).  Given this confusion, we directed the parties to address whether appellate panels should review the Court of Workers' Compensation Claims' resolution of conflicting documentary medical testimony de novo or for abuse of discretion.

In recent years, some workers' compensation panels, including the panel we review in this case, have required deference to a trial court's factual findings based upon in-person testimony.  *Edwards*, 2024 WL 3311539, at *5; *see also Jumper v. Kellogg Co.*, No. W2020-01274-SC-R3-WC, 2021 WL 2582178, at *6 (Tenn. Workers' Comp. Panel June 23, 2021); *Kilburn v. Granite State Ins.*, 522 S.W.3d 384, 389 (Tenn. 2017).  This stems from loose language in *Madden v. The Holland Group of Tenn., Inc.*, where this Court described the standard of review as requiring reviewing courts to extend "considerable deference . . . [to] any factual determinations made by the trial court."  277 S.W.3d 896, 898 (Tenn. 2009).  *Madden* cited to *Tyron v. Saturn Corp.*, 254 S.W.3d 321, 327 (Tenn. 2008).  But *Tyron* did not require deference to factual findings, and instead only afforded deference to credibility determinations and assessments of weight to in-court testimony. *Id*.  Many workers' compensation panels have relied on this language in *Madden* to apply a deferential standard to any factual determination.  *See, e.g.*, *Kilburn v. Granite State Ins.*, 522 S.W.3d 384, 389 (Tenn. 2017) ("When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual determinations made by the trial court.") (citing *Madden*, 277 S.W.3d at 898).  As explained below, this deference is incorrect and should no longer be followed.

---

[5] Although the Special Workers' Compensation Appeals Panel typically reviews appeals from the Workers' Compensation Appeals Board, we exercised jurisdiction in this case.  *See* Tenn. Sup. Ct. R. 51, § 2 (granting this Court the authority to hear cases appealed to the special panel).

The standard of review in workers' compensation cases depends on the determination under consideration by the reviewing court. For factual findings, an appellate panel's review is "de novo upon the record[,] . . . [with] a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. Code Ann. § 50-6-225(a)(2) (Supp. 2020); *see also* Tenn. Code Ann. § 50-6-239(c)(7) (Supp. 2020). This requires the "reviewing court . . . to conduct an independent examination of the record to determine where the preponderance of the evidence lies." *Lytle v. Fru-Con, Inc.*, No. W2002–01337–WC–R3–CV, 2003 WL 213775, at *1 (Special Workers' Comp. Panel Jan. 30, 2003) (citing *Wingert v. Gov't of Sumner Cnty.*, 908 S.W.2d 921, 922 (Tenn. 1995)). Critically, the worker's compensation statute requires a de novo review with a presumption of correctness for factual findings. Tenn. Code Ann. §§ 50-6-225(a)(2), -239(c)(7).

The abuse-of-discretion standard is sometimes appropriate for credibility determinations. When presented with live, in-person testimony, trial courts are "in the best position to make credibility determinations . . . ." *Dyson-Kissner-Moran Corp. v. Shavers*, No. E2015–02005–SC–R3–WC–MAILED, 2015 WL 12850553, at *5 (Special Workers' Comp. Panel Dec. 16, 2015) (quoting *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999)). Accordingly, an abuse of discretion standard of review applies to these credibility determinations, and "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Id.* (citation modified); *see also Woodlawn Mem'l Park, Inc. v. Keith*, 70 S.W.3d 691, 695 (Tenn. 2002); *Tobitt v. Bridgestone/Firestone, Inc.*, 59 S.W.3d 57, 61 (Tenn. 2001); *Krick v. City of Lawrenceburg*, 945 S.W.2d 709, 712 (Tenn. 1997); *Humphrey v. David Witherspoon, Inc.*, 734 S.W.2d 315, 315 (Tenn. 1987). This is no different than the standard of review applicable to credibility findings in civil trials. *See, e.g., Goodwin v. Jim Bale Constr., LLC*, No. M2014–00919–COA–R3–CV, 2015 WL 3814163, at *2 (Tenn. Ct. App. June 18, 2015).

But when it comes to deposition testimony, an appellate panel is in the same position as the trial court to make credibility determinations, because "all impressions of weight and credibility must be drawn from the contents thereof." *Humphrey*, 734 S.W.2d at 315–16. The standard is less deferential to trial courts because a deposition transcript does not involve "the appearance of witnesses" or "oral testimony at trial." *Id.* at 316. Consequently, when "medical proof is presented by deposition, the reviewing court may draw its own conclusions about the weight and credibility of the expert testimony." *Richards v. Liberty Mut. Ins. Co.*, 70 S.W.3d 729, 732 (Tenn. 2002). Therefore, an abuse of discretion standard is inappropriate for credibility findings stemming from deposition testimony. *Id.*; *see also Houser v. Bi-Lo, Inc.*, 36 S.W.3d 68, 71 (Tenn. 2001); *Krick*, 945 S.W.2d at 712; *Orman v. Williams Sonoma, Inc.*, 803 S.W.2d 672, 676 (Tenn. 1991).

In Ms. Edwards' case, the Appeals Board applied an abuse of discretion standard when reviewing factual findings based on several depositions. *Edwards*, 2024 WL

3311539, at *5, 11. Both parties concede that this was error and, based on the standard discussed above, we agree.

In sum, the standard of review for factual determinations in workers' compensation cases is de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. Code Ann. § 50-6-225(a)(2). For in-person testimony, a reviewing court reviews the trial judge's credibility and weight-of-the-evidence determinations for an abuse of discretion. *See, e.g.*, *Bowman v. Bowman*, 836 S.W.2d 563, 567 (Tenn. Ct. App. 1991) ("Credibility is an issue for the trial court who saw and heard the witnesses testify and is therefore in the premier position to determine credibility.") (citing *Early v. Street*, 241 S.W.2d 531 (Tenn. 1951)). A reviewing court gives no deference to credibility determinations based on deposition transcripts. *E.g.*, *Bi-Lo, Inc.*, 36 S.W.3d at 70–71; *Tyron*, 254 S.W.3d at 327.

*Defining Aggravation Injuries under the 2013 Workers Compensation Reform Act*

We next address "aggravation" injuries. In 2013, the Tennessee General Assembly passed the Worker's Compensation Reform Act ("2013 Reform Act"). 2013 Tenn. Pub. Ch. 289. The Act attempted to streamline the claims process and bring uniformity to decisions. These amendments redefined "injury," rejected liberal construction in favor of a fair and impartial construction of the Act, added a requirement for a specific incident identifiable by time or place, and increased the burden to establish causation from "could be" to "contributed more than 50%." *Miller v. Lowe's Home Ctrs., Inc.*, No. 2015-05-0158, 2015 WL 6446638, at *3–5 (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015). Since these amendments, this Court[6] has not addressed compensability for aggravation of a pre-existing condition.

Prior to 2013, Tennessee statutory law did not address "aggravation" injuries in the workers' compensation context.[7] This Court, however, determined that the aggravation of

---

[6] The Tennessee Supreme Court's Special Workers' Compensation Appeals Panel has discussed aggravation injuries in the context of the 2013 Reform Act, albeit tangentially. *See, e.g.*, *Edwards-Bradford v. Kellogg Co.*, 2023 WL 5704526, at *4 (Tenn. Workers' Comp. Panel Sept. 5, 2023); *Shelton v. Hobbs Enters., LLC*, No. M2020-01220-SC-R3-WC, 2021 WL 4432624, at *6 (Tenn. Workers' Comp. Panel Sept. 27, 2021).

[7] Tenn. Code Ann. § 50-6-102 (2012) provided the following definition of "injury" and "personal injury:"

(A) Mean an injury by accident, arising out of and in the course of employment, that causes either disablement or death of the employee; provided, that:
(i) An injury is "accidental" only if the injury is caused by a specific incident, or set of incidents, arising out of and in the course of employment, and is identifiable by time and place of occurrence; and

10

a pre-existing condition was a compensable injury under workers' compensation law in some circumstances. *See Trosper v. Armstrong Wood Prods., Inc.*, 273 S.W.3d 598, 607 (Tenn. 2008). In *Trosper*, this Court explained that a compensable "aggravation injury" is an injury that does not merely increase pain but "advances the severity of the pre-existing condition, or if, as a result of the pre-existing condition, the employee suffers a new, distinct injury other than increased pain." *Id.* at 607. Courts struggled to apply *Trosper*'s explanation of an "aggravation" injury. *See, e.g., Miller*, 2015 WL 6446638, at *3 ("Determining the compensability of an alleged work-related aggravation . . . has long been a source of difficulty under Tennessee's Worker's Compensation Law."). *Trosper* did not require an anatomic change. However, some courts conflated *Trosper*'s "new injury requirement" with an "anatomic change requirement." *See Paris v. McKee Foods Corp.*, No. E2020-00358-SC-R3-WC, 2021 WL 668493, at *6 (Tenn. Workers' Comp. Special Panel Feb. 16, 2021).

Consistent with the goal of uniformity, the 2013 Reform Act explicitly included aggravation injuries in the statutory definition of "injury" for the first time. Because we now have a statutory definition, *Trosper*'s explanation and its progeny are inapposite. For injuries, like this one, occurring after July 1, 2014, the updated definition of injury applies:

> (12) "Injury" and "personal injury" mean an injury by accident . . . provided, that:
>
> > (A) An injury . . . shall not include the aggravation of a preexisting disease, condition or ailment *unless it can be shown to a reasonable degree of medical certainty that the aggravation arose primarily out of and in the course and scope of employment*;
> > (B) An injury "arises primarily out of and in the course and scope of employment" only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes;
> > (C) An injury causes death, disablement or the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing

---

(ii) The opinion of the physician, selected by the employee from the employer's designated panel of physicians pursuant to §§ 50-6-204(a)(4)(A) or (a)(4)(B), shall be presumed correct on the issue of causation but said presumption shall be rebutted by a preponderance of the evidence;

(B) Include a mental injury arising out of and in the course of employment; and

(C) Do not include:

> (i) A disease in any form, except when the disease arises out of and in the course and scope of employment; or
>
> (ii) Cumulative trauma conditions, hearing loss, carpal tunnel syndrome, or any other repetitive motion conditions unless such conditions arose primarily out of and in the course and scope of employment[.]

the death, disablement or need for medical treatment, considering all causes;

(D) "Shown to a reasonable degree of medical certainty" means that, in the opinion of the physician, it is more likely than not considering all causes, as opposed to speculation or possibility;

(E) The opinion of the treating physician, selected by the employee from the employer's designated panel of physicians pursuant to § 50-6-204(a)(3), shall be presumed correct on the issue of causation but this presumption shall be rebuttable by a preponderance of the evidence[.]

Tenn. Code Ann. § 50-6-102(12) (Supp. 2020) (emphasis added).  While not a model for clarity, the statutory text permits a claim based on aggravation.

To be compensable, an injury must: (1) be an injury by accident;[8] (2) arise primarily out of and in the course of employment; and (3) cause death, disablement or the need for medical treatment.  *Id.*  To be considered an injury by accident, the injury must be caused by a specific incident arising primarily out of and in the course of employment.  *Id.*  For aggravation injuries, the claimant must show, to a reasonable degree of medical certainty, that the aggravation primarily arose out of and in the course and scope of employment.  *Id.*  This requires the employee to demonstrate that the employment contributed more than fifty percent in causing the aggravation.  *Id.*  Finally, the employee must establish that the aggravation of the pre-existing condition contributed more than fifty percent in causing the death, disablement, or need for medical treatment, to a reasonable degree of medical certainty.  *Id.*  Further, the "opinion of the treating physician, selected by the employee from the employer's designated panel of physicians . . . shall be presumed correct on the issue of causation," but the employee can overcome this presumption "by a preponderance of the evidence."  *Id.*

Because "aggravation" is not defined by statute, we must determine its meaning. *See, e.g.*, *Brookside Mills, Inc. v. Atkins*, 322 S.W.2d 217, 218 (Tenn. 1959).  For this task, we must give aggravation its "natural and ordinary meaning in the context in which [it] appear[s]."  *State v. Deberry*, 651 S.W.3d 918, 925 (Tenn. 2022) (citing *Ellithorpe v. Weismark*, 479 S.W.3d 818, 827 (Tenn. 2015)).  "Specifically, we must decide 'how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued.'"  *Id*. at 924 (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012)).

---

[8] The statute also covers other kinds of injures such as "a mental injury, occupational disease including diseases of the heart, lung and hypertension, or cumulative trauma conditions including hearing loss, carpal tunnel syndrome or any other repetitive motion conditions."  Tenn. Code Ann. § 50-6-102(12) (Supp. 2020).  This case only concerns accidental injuries.

Without a "statutory definition[], we first look to authoritative dictionaries published around the time of a statute's enactment." *Deberry*, 651 S.W.3d at 925 (citing *State v. Edmondson*, 231 S.W.3d 925, 928 & n.3 (Tenn. 2007)). In addition to dictionary definitions, we look at the context in which the language is used to determine its original meaning. *State v. Robinson*, 676 S.W.3d 580, 588 (Tenn. 2023) ("Of course, we [examine] the plain text of the statute, 'read in context of the entire statute, without any forced or subtle construction which would extend or limit its meaning.'") (quoting *State v. Cauthern*, 967 S.W.2d 726, 735 (Tenn. 1998)).

Dictionaries define "aggravation" as "an act or circumstance that intensifies something or makes something worse." *Aggravation*, Merriam Webster's Dictionary (Dec. 2025), https://perma.cc/K2XB-78L5; *see also Aggravation*, Cambridge Advanced Learner's Dictionary & Thesaurus (last accessed Nov. 2025), https://perma.cc/A2RM-PGFH (defining "aggravation" as "the act of making something such as a problem or injury worse"); *Aggravation*, *Oxford English Dictionary* (Sept. 2025), https://doi.org/10.1093/OED/2958481396 (defining "aggravation" as "[a] circumstance that increases the gravity or seriousness of a situation").[9] Considering these definitions, the natural and ordinary meaning of "aggravation" does not require a *permanent* change or a *permanent* worsening of a condition.[10]

Additionally, the applicable statute defines injury as "caus[ing] death, disability *or* the need for medical treatment." Tenn. Code Ann. § 50-6-102(12) (emphasis added). This indicates a change from the prior case law requiring a permanent worsening of a condition. An aggravation injury could cause the need for medical treatment without resulting in an anatomical change or permanent worsening of a condition. For example, an aggravation injury could arise out of and in the course and scope of employment yet ultimately resolve through medical treatment. If medical treatment resolves the aggravation, that aggravation

---

[9] Because "[d]ictionaries tend to lag behind linguistic realities[,]" it is permissible to consult dictionaries published a few years after a statute's enactment. Scalia & Garner, *supra*, at 419.

[10] We recognize that the American Medical Association Guides to the Evaluation of Permanent Impairment define aggravation differently. Its definitions include:

> *Aggravation* is a circumstance or event that permanently worsens a preexisting or underlying condition. The terms *exacerbation, recurrence, or flare-up* generally imply worsening of a condition temporarily, which subsequently returns to baseline. Exacerbation does not equal aggravation.

Am. Med. Ass'n, Guides to the Evaluation of Permanent Impairment 25 (6th ed. 2008) (emphasis in original). This meaning does not comport with the plain and ordinary meaning of "aggravation." Moreover, there is no indication in the Workers' Compensation statute of an intent for the AMA's definitions of "aggravation" or "exacerbation" to apply. *See Miller*, 2015 WL 6446638, at *3 ("[T]here is nothing in the statute indicating that the general assembly relied on the [AMA] definition[] of the term[] 'aggravation[.]'"); *cf.* Tenn. Code Ann. § 50-6-204(k)(2)(A) (Supp. 2020) (mandating use of AMA guidelines in some workers' compensation contexts).

is definitionally not permanent, yet may still be compensable. Simply put, as used in the 2013 Reform Act, aggravation means an intensification or worsening of a preexisting disease, condition or ailment, permanent or not, that contributes more than fifty percent in causing death, disability or the need for medical treatment. *See id.* Courts should instead focus on the two causation requirements to be demonstrated by expert medical proof. Tenn. Code Ann. § 50-6-102(12).

Here, the alleged aggravation occurred following a work-related motor vehicle accident. There is no dispute that this specific incident arose out of and in the course of Ms. Edwards' employment. Therefore, the question before us is whether the aggravation injury is compensable under Tenn. Code Ann. § 50-6-102(12). This requires us to determine whether Ms. Edwards' injury was (1) caused by an accident; (2) arose primarily out of and in the course and scope of her employment; and (3) caused death, disablement or the need for medical treatment. *Id.* In other words, Ms. Edwards must prove (1) that the work accident contributed more than fifty percent in causing the aggravation, and (2) that the aggravation, which was caused by the work accident, contributed more than fifty percent to disablement or the need for medical treatment. *Id.*

*The Compensability of Ms. Edwards' Aggravation Injury*

We now address whether the Trial Court correctly determined that the aggravation of Ms. Edwards' injury—aggravation of her arthritic knees—was compensable under workers' compensation law.

We begin by examining whether Ms. Edwards showed "by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." Tenn. Code Ann. § 50-6-102(12)(B). To be clear, the injury is the aggravation of the preexisting condition. Thus, the first question is whether the work accident contributed more than fifty percent in causing the aggravation. Then second, we consider whether Ms. Edwards showed "to a reasonable degree of medical certainty" that the aggravation injury contributed more than fifty percent to her need for knee replacement surgeries and also to her disability. *Id*. § 50-6-102(12)(C). This represents a change from the old statute, which allowed an employee to "prevail on the issue of medical causation if a medical expert testifie[d] that a work accident 'could be' the cause of a medical condition." *Miller*, 2015 WL 6446638, at *4. Under the 2013 Reform Act, "a reasonable degree of medical certainty" means more likely than not, considering all causes and in the opinion of the physician. Tenn. Code Ann. § 50-6-102(12)(D). On causation issues, "[t]he opinion of the treating physician, selected by the employee . . . shall be presumed correct . . . but this presumption shall be rebuttable by a preponderance of the evidence." Tenn. Code Ann. § 50-6-102(12)(E).

*i.        Whether the Work Accident Contributed More Than Fifty Percent to the Aggravation*

On the issue of whether the work accident contributed more than fifty percent (50%) in causing the aggravation, both courts below agreed that the "aggravation of [Ms. Edwards'] pre-existing knee conditions . . . arose primarily out of the work accident." *Edwards*, 2024 WL 3311539, at *11. This finding is supported by the preponderance of the evidence, as "all physicians who testified in this case acknowledged that [Ms. Edwards] more likely than not suffered increased symptoms and decreased function in both knees after the truck accident." *Id.* Accordingly, we agree with the courts below that the truck accident contributed more than fifty percent in causing the aggravation of Ms. Edwards' pre-existing arthritis.

This does not answer whether Ms. Edwards' injuries were compensable because Ms. Edwards must also show that the aggravation injury, and not her pre-existing arthritis, caused her to need knee surgery and also caused her disablement. Despite agreement on the first issue, the Trial Court and Appeals Board disagreed on whether the work accident caused Ms. Edwards' need for knee replacement surgeries and her disablement.

*ii.        Whether the Aggravation Caused the Need for her Knee Replacement Surgeries*

While the Trial Court found that the aggravation contributed more than fifty percent in causing the need for the surgeries, the Appeals Board disagreed. The Appeals Board concluded that the evidence failed to show that the aggravation contributed more than fifty percent in causing the need for the medical treatment. *Id.* at *11. We disagree. Upon review of the record, we find that Ms. Edwards showed, to reasonable degree of medical certainty, that the aggravation of her pre-existing arthritis contributed more than fifty percent in causing the need for her knee surgeries.

The medical professionals in this case disagreed on many issues. Dr. Hutchison, Ms. Edwards' treating physician, testified that "an exacerbation of symptoms caused by the accident . . . [was not] compensable . . . under Workers' Compensation." Dr. Christian agreed that the aggravation was not compensable. Dr. Hutchison predicated his opinion, in part, on a misunderstanding of Tennessee's workers' compensation law. Dr. Hutchison believed that the accident did not cause any permanent change or "change of anatomical function of her knees" and therefore, was not compensable. Similarly, Dr. Christian believed the aggravation was not compensable because the injury did not "advance the arthritis."

On the same issue, Drs. Sweo and Schrader agreed that the aggravation caused the need for Ms. Edwards' knee replacement surgeries. Although Dr. Sweo did not provide an explanation for his conclusion, Dr. Schrader provided several reasons. *Id.* at *12. Dr.

Schrader opined that Ms. Edwards sustained a fracture and medial meniscus tear that were more likely than not aggravated by the truck accident. He also supported this conclusion by pointing to Ms. Edwards' testimony that her "knees were apparently painless with no limitation of function" before the truck accident.

The medical professionals expressed different conclusions as to whether Ms. Edwards was symptomatic prior to the accident. The onset of Ms. Edwards' symptoms is a key indicator for determining whether the aggravation caused the need for surgery. If Ms. Edwards was asymptomatic prior to the accident, she would have been ineligible for knee-replacement surgery, as doctors do not typically perform knee-replacement surgeries on asymptomatic patients. If Ms. Edwards was symptomatic prior to the accident, she could have been eligible for knee-replacement surgery irrespective of the accident, rendering causation questionable.

We agree with the Trial Court that "Ms. Edwards rebutted Dr. Hutchison's opinion and proved by a preponderance of the evidence that the accident aggravated her knee arthritis by causing disabling pain and the need for bilateral knee replacements." *See also* Tenn. Code Ann. § 50-6-239(c)(6)–(7). The Trial Court found that Ms. Edwards "was never diagnosed with arthritis before the accident," and that her medical and work history provided no indication that she struggled with knee issues prior to the work accident. Additionally, the Trial Court noted that "Dr. Hutchison had no history of Ms. Edwards having prior problems but surmised, without evidence, that she did." Dr. Hutchison also testified that Ms. Edwards "very well could have had knees that were end stage arthritis, but [had] no symptoms and doing well or minimal symptoms." We agree with Judge Conner that Drs. Hutchinson and Sweo's testimony that Ms. Edwards "likely had some symptoms in her knees prior to the truck accident" is an assumption which we need not credit. *Edwards*, 2024 WL 3311539, at *16 (Conner, P.J., dissenting). This is especially true in light of the Trial Court's crediting of Ms. Edwards. Further, nothing in the record, beyond the doctors' bare assumptions, shows that Ms. Edwards experienced knee-related symptoms prior to the work accident. Put simply, Ms. Edwards only became eligible for knee-replacement surgery once she became symptomatic, and she only became symptomatic after the accident aggravated her pre-existing arthritis. In this way, the evidence below shows, to a reasonable degree of medical certainty, that the aggravation caused the need for knee replacement surgery.

Further, Drs. Hutchison and Christian's conclusions that Ms. Edwards' injury was not compensable should have been disregarded. First, these are legal conclusions that the doctors were not permitted to make. Although experts may testify as to opinions of fact regarding medical proof, medical experts may not testify as to "legal conclusions" because drawing legal conclusions from facts "is a judicial function and only the court may reach legal conclusions." *Coffey v. City of Knoxville*, 866 S.W.2d 516, 519 (Tenn. Workers' Comp. Panel 1993); *see also* Tenn. R. Evid. 702 (permitting experts to testify in the form of an opinion to assist the trier of fact in understanding a fact in issue). Second, Drs.

Hutchison and Christian's focus on anatomic changes is inapposite here because an anatomic change is not a required element of "aggravation," as the term is statutorily defined, and was never a bright-line requirement in aggravation cases. *Trosper*, 273 S.W.3d at 616 (Koch, J., dissenting) ("[W]e have never held that proving the existence of an anatomical or physical change is the only way to establish that work-related activities caused a progression in an employee's preexisting condition."). Therefore, we agree with the Trial Court's conclusion that these opinions are "incorrect" and "flawed."

Accordingly, we hold that the record preponderates against the statutory presumption afforded to Ms. Edwards' treating physician under Tennessee Code Annotated Section 50-6-102(12)(E). The record supports the Trial Court's finding that Ms. Edwards' August 14, 2020, accident caused a compensable aggravation of her arthritic knees and that the aggravation was more than fifty percent the cause of her need for knee surgery.

*iii.        Ms. Edwards' Claim for Temporary and Permanent Total Disability Benefits*

Next, we turn to Ms. Edwards' claim for both temporary and permanent total disability benefits. For both forms of disability benefits, Ms. Edwards must prove, to a reasonable degree of medical certainty, that the aggravation was more than fifty percent the cause of her disablement. We conclude that the Trial Court correctly awarded Ms. Edwards disability benefits.

The Trial Court awarded temporary disability benefits based on Dr. Sweo's restriction of Ms. Edwards from working for nearly two years based on the aggravation of her knees and her left-knee replacement. Additionally, the calculation of temporary benefits was based on an end date of September 19, 2022, which is the date that Dr. Schrader determined Ms. Edwards reached "maximum medical improvement."[11] We hold that the evidence does not preponderate against the Trial Court's finding that Ms. Edwards is entitled to temporary benefits. Therefore, we reinstate the Trial Court's December 12, 2023 award.

We also conclude that the Trial Court correctly awarded permanent total disability benefits when it determined that Ms. Edwards met her burden. The Trial Court based its determination on "Dr. Schrader['s] . . . [explanation] [of] Ms. Edwards' condition, [as] his restrictions [were] the only ones in the record." The Appeals Board disagreed and determined that Ms. Edwards failed to meet her burden because Dr. Schrader's finding of permanent total disability was based, in part, on non-compensable injuries associated with the truck accident.

---

[11] Temporary benefits run until the employee reaches "maximum medical improvement"—the time at which "all active medical treatment" ends. Tenn. Code Ann. § 50-6-207(1)(E). Because only Dr. Schrader testified as to maximum medical improvement, we credit his determination.

Upon review, we agree with the Trial Court that Ms. Edwards met her burden of showing permanent total disability. Although Dr. Schrader considered other injuries, his finding of permanent total disability ultimately resulted from the aggravation to Ms. Edwards' knees stemming from the truck accident. For example, Dr. Schrader discussed Ms. Edwards' inability "to ambulate for significant distances," or "to walk on uneven ground or go up and down stairs." Critically, Dr. Schrader discussed how Ms. Edwards' permanent limitations were caused, to a reasonable degree of medical certainty, by the injuries she sustained in her work-related truck accident. Dr. Schrader also discussed how Ms. Edwards would be unable to walk more than fifty feet at a time and would struggle to stand for more than fifteen or twenty minutes. Additionally, Dr. Schrader determined that Ms. Edwards would be unable to stoop or climb ladders.

We conclude that the evidence does not preponderate against the finding of the Trial Court that Ms. Edwards is permanently and totally disabled. Accordingly, we reinstate the Trial Court's determination on this issue.

## III.  CONCLUSION

We reverse the judgment of the Appeals Board because the evidence does not preponderate against the Trial Court's order awarding Ms. Edwards workers' compensation and disability benefits. Therefore, we reinstate the award of the Trial Court in its December 12, 2023 order.

_____

MARY L. WAGNER, JUSTICE